**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Samuel Shirley, | No. CV-23-08101-PCT-DMF |
| Plaintiff, | |
| v. | **ORDER** |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

This matter is before the Court on Plaintiff Samuel Shirley's Motion for Summary Judgment (Docs. 20, 21) and Defendant Office of Navajo and Hopi Indian Relocation's ("ONHIR") Cross-Motion for Summary Judgment (Docs. 22, 23). Defendant ONHIR filed a response to Plaintiff's Motion for Summary Judgment. (Docs. 22, 23) Plaintiff filed a reply in support of his Motion for Summary Judgment and a response to Defendant ONHIR's Cross-Motion for Summary Judgment. (Docs. 24, 25) Defendant ONHIR filed a reply in support of its Cross-Motion for Summary Judgment. (Doc. 26)

For the reasons set forth below, Plaintiff's Motion for Summary Judgment will be granted (Doc. 20) as set forth herein, ONHIR's Cross-Motion for Summary Judgment will be denied (Doc. 22), and the July 7, 2017, final decision of ONHIR will be reversed and remanded for further proceedings.[1]

---

[1] Because it would not assist in resolution of the instant issues, the Court finds that the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

## I.   BACKGROUND

### A.  The Navajo-Hopi Settlement Act

The Navajo-Hopi Settlement Act ("Settlement Act"), Pub. L. No. 93-531, 88 Stat. 1716 (1974), authorized a court-ordered partition of land occupied by Navajo and Hopi residents and created the Navajo Partitioned Lands ("NPL") and the Hopi Partitioned Lands ("HPL"). *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121-22 (9th Cir. 1989). The Settlement Act also created ONHIR, which provides services and benefits for relocation of individuals who resided on land that was allocated to the other tribe. *See Stago v. Office of Navajo & Hopi Indian Relocation*, No. CV-20-08118-PHX-SPL, 562 F.Supp.3d 95, 100 (D. Ariz. 2021) (citing *Bedoni*, 878 F.2d at 1121-22). A Navajo applicant for relocation benefits under the Settlement Act is eligible if he was a legal resident of the HPL as of December 22, 1974, became a head of household by July 7, 1986, and remained a resident of the HPL at the time he became a head of household. *Id.* at 101; 25 C.F.R. § 700.147(a), (e). A married or single person may be head of household; a single person qualifies as head of household if, while living "on land partitioned to the Tribe of which he/she is not a member," such person "actually maintained and supported him/herself[.]" 25 C.F.R. § 700.69(a)(2). Although there is no set rule for the income threshold to be recognized as head of household, ONHIR has "recognized that an applicant who earned at least $1,300 per year can make a prima facie showing of self-supporting status." *Ambrose v. Office of Navajo & Hopi Indian Relocation*, No. CV-21-08133-PCT-DLR, 2022 WL 3921115, at *3 (D. Ariz. Aug. 31, 2022).

The applicant bears the burden to prove both HPL residence and head of household status. 25 C.F.R. § 700.147(b). Here, Plaintiff and ONHIR agree that Plaintiff became the head of household as an individual at some point in 1985. (Doc. 20 at 3; Doc. 22 at 11) Accordingly, only HPL residence is at issue in this appeal.

### B.  ONHIR Procedural History

Plaintiff Samuel Shirley ("Plaintiff") was born in 1962 and is an enrolled member of the Navajo Nation. (Doc. 13 at 4; Doc. 13-2 at 9) On April 21, 2009, Plaintiff applied

for relocation benefits under the Settlement Act. (Doc. 13-2 at 5, 7-13) Plaintiff's April 2009 application stated that Plaintiff first lived in the HPL residence "In 1962 all my live[.]" (*Id.* at 11) Plaintiff's application also included that Plaintiff moved from the HPL in 1984 to "HPL over the Hopi fence" with his parents Francis and Lucille Shirley due to "Relocation." (*Id.* at 12)[2]

In support of his application, Plaintiff provided a Social Security earnings statement reflecting earnings of $2,681 for 1985 and $2,313 for 1986. (Doc. 13 at 1; Doc. 13-2 at 19-21; Doc. 13-3 at 1) ONHIR's administrative record for Plaintiff includes various other documents, such as documents and a transcript reflecting testimony from Plaintiff's mother and older brother's previous relocation benefits applications and proceedings thereon, both ultimately resulting in an award of benefits to Plaintiff's mother Lucille Shirley[3] ("Lucille") and older brother Frankie Shirley[4] ("Frankie"). (Docs. 13, 13-1; Doc. 13-2 at 1-3) At the 1998 appeal hearing presided over by ONHIR Independent Hearing Officer ("IHO") Harold Merkow regarding the application of Plaintiff's older brother Frankie, both Frankie and Plaintiff's mother Lucille testified. (Doc. 13-1 at 12-24; Doc. 13-2 at 1-3; *see also* Doc. 13-2 at 15-17; Doc. 13-3 at 6) ONHIR's administrative record for Plaintiff also includes Plaintiff's 1988 affidavit of residency stating he had been a part of his mother Lucille's household for four years and planned to reside with her after Lucille's relocation. (Doc. 13 at 20) In addition, the record includes Plaintiff's and Lucille's 1989 affidavits of residency stating Plaintiff had been a part of his mother Lucille's household for an unspecified period and that Plaintiff planned to reside with his mother Lucille after Lucille's relocation. (*Id.* at 22-25)[5] The administrative record also reflects that Plaintiff

---

[2] The OHNIR "Form For Recording Eligibility Related Contact" reflects that ONHIR employee Joseph Shelton spoke with Plaintiff as part of Plaintiff's application preparation and/or submission. (Doc. 13-2 at 5)

[3] Plaintiff's mother had applied for relocation benefits in 1979, when Plaintiff was a minor. (Doc. 13 at 27; Doc. 13-2 at 15) Plaintiff's mother was relocated in 1991, not 1984. (Doc. 13-2 at 15-16)

[4] Frankie was found eligible for relocation benefits in 1998. (Doc. 13-6 at 20)

[5] Plaintiff's mother was relocated in 1991, not 1984. (Doc. 13-2 at 15-16) Additionally, ONHIR's administrative record for Plaintiff includes Lucille's June 1990 HPL residence

was included as a dependent of Lucille in her 1988 tax return. (Doc. 13-10 at 12, 14)

On February 22, 2013, ONHIR denied Plaintiff's April 21, 2009, application, determining that Plaintiff had not shown that he was a resident of the HPL when Plaintiff became a head of household in 1985. (Doc. 13-3 at 8-10) Because Plaintiff became an adult on August 29, 1980, Plaintiff was required to show that he was an HPL resident from August 29, 1980, until the time Plaintiff became a head of household in 1985. (*Id.*) ONHIR referenced Plaintiff's statement in his April 2009 application that he had moved off the HPL in 1984 and found that Plaintiff had not met his preponderance of the evidence burden of proof to show his residency on HPL from August 29, 1980, until the time Plaintiff became a head of household in 1985. (*Id.* at 8)

Through counsel in April 2013, Plaintiff timely appealed ONHIR's denial of his April 2009 application for relocation benefits. (Doc. 13-3 at 12-14, 16) In June 2016, ONHIR issued a notice of hearing for April 28, 2017; the notice stated that "[a]ll parties are invited to attend and present testimony and documentation in support of their respective positions" and that "[a]ll witness lists and exhibits are to be exchanged no later than two (2) weeks prior to the scheduled hearing date." (*Id.* at 22) On April 28, 2017, IHO Harold Merkow held an administrative appeal hearing, during which Plaintiff was represented by counsel; Plaintiff and his uncle Kee Bahe Yazzie testified at the hearing, and the relocation office did not call any witnesses. (Doc. 13-4 at 1-25; Doc. 13-5 at 1-11) At the conclusion of the April 28, 2017, hearing, the IHO stated:

> Okay. Thank you. Then that will conclude the testimony portion of this Hearing and we will hold this Matter Open for a period of two weeks after receipt of the transcript, to permit either or both of you to file written Post Hearing Memoranda, after which a decision will be made within 60 days from that date. So that will conclude this Hearing and I thank you all.

(Doc. 13-5 at 11)

On June 1, 2017, ONHIR submitted a post hearing brief, which framed the issues

---

record, which reflected that Lucille and her household did not move off of HPL during times when Lucille and her husband had employment related housing in Kayenta for various years, but rather the HPL residence was the permanent residence where Lucille, her husband, and their sons including Frankie and Plaintiff lived. (Doc. 13-1 at 9-11)

as follows:

> The issue in this Appeal is whether [Plaintiff] was a legal resident of the Hopi Partitioned Lands ("HPL") when he attained Head of Household ("HOH") status in 1985.

> The ONHIR Eligibility and Appeals Branch ("E/A") agrees that [Plaintiff] as a 12 year-old dependent minor (DOB: []1962) had derivative HPL residency through his parents Lucille and Francis1 Shirley CF 1127 who were certified for Relocation Benefits on October 29, 1982 and who relocated on April 9, 1991.

(Doc. 13-5 at 16-24; Doc. 13-6 at 1-7) On June 12, 2017, Plaintiff submitted post-hearing briefs and exhibits to the IHO. (Doc. 13-6 at 9-23; Doc. 13-7 at 1-23; Doc. 13-8 at 1-12) To his brief, Plaintiff attached ONHIR interview notes from 1979 in Plaintiff's mother Lucille's case; the IHO hearing transcript and benefits certification for Plaintiff's older brother Frankie; Plaintiff's 1988 and 1989 affidavits stating that he was a member of Lucille's household; a 1990 HPL residence record for Lucille; and two prior IHO decisions, *In the Matter of the Application of Darlene Williams*, and *In the Matter of the Application of Nellie K. Deal*. (Doc. 13-6 at 15-23; Doc. 13-7 at 1-23; Doc. 13-8 at 1-12)

On June 17, 2017, the IHO emailed counsel for Plaintiff and ONHIR requesting answers for two questions: (1) the distance between Chapter House and the Sagebrush Springs residence (Plaintiff's claimed HPL residence, which is the same as his mother Lucille's and his brother Frankie's HPL residence (Doc. 13-4 at 7)), and (2) the condition of the road between the two locations, such as whether the road was paved, unpaved, had a wagon track, or nothing. (Doc. 13-7 at 14-15) In the June 17, 2017, email, the IHO stated that "responses will be made a part of the official record of this appeal." (*Id.*) By email, Plaintiff's counsel asked the IHO whether the IHO would re-open the record to add Plaintiff's affidavit or hold an additional hearing to take testimony; Plaintiff's counsel also raised objection because the record had already closed, after noting that no map had been admitted in the record. (Doc. 13-8 at 17) In subsequent emails, the IHO stated that he would accept affidavits from the parties or stipulations of counsel as to the requested information. (*Id.* at 26-27)

In response to the IHO's post-hearing emails, ONHIR's counsel sent an email to the IHO with a link to an area map and also submitted a memo by ONHIR employee Joseph Shelton reflecting information he obtained on June 21, 2017, by speaking on the telephone with Ella M. Benally, a Community Service Coordinator for the Forest Lake Chapter, as well as two printed internet pages accessed on June 21, 2017, about the Forest Lake Chapter. (Doc. 13-9 at 3, 5-7) The memo stated:

> Ella informed me that:
> There is no telephone land line to Forest Lake Chapter, however, a satellite type telephone system was installed some time in 1990. There is also a tower near by enable limited cellar services. The chapter has e-mail address through Navajochapters.Org.
> Ella does not know how the Chapter House communicated with outside communities before satelite telephone.

(*Id.* at 5) A Declaration by ONHIR employee Joseph Shelton was also submitted. (*Id.* at 16-17) In the Declaration, ONHIR employee Joseph Shelton stated that he calculated the approximate distance from the Sagebrush Springs residence to the Forest Lake Chapter House as approximately 12 miles, of which the first four miles from the Forest Lake Chapter House were paved in the 1970s and the balance remained unpaved in the 1980s. (*Id.* at 16) The Declaration reported the June 21, 2017, telephone call with Ella differently, going from Ella not knowing about communications before the 1990 telephone system to her having stated that "there was no telephone service at all at Forest Lake Chapter" before the 1990 telephone system. (*Id.* at 17)

Plaintiff's counsel submitted a notarized Affidavit by Plaintiff executed on June 22, 2017, which included Plaintiff's sworn statement that his part-time "employer at the Amigos Mexican Restaurant would contact my parents in Kayenta, who had a land-line phone at their rented BIA employee quarters, and my parents would drive to Sagebrush Springs to let me know that I was being called to work at Amigos the following day." (*Id.* at 10-11) Plaintiff also stated in his Affidavit that his "family's homesite at Sagebrush Springs was located about 12 miles from the Forest Lake Chapter House, and [he has] always been a member of the Forest Lake Chapter. In the mid-1980's when [he] lived at

Sagebrush Springs, the condition of the road between Sagebrush Springs and the Forest Lake Chapter House was very rough." (*Id.* at 10)

On July 7, 2017, the IHO upheld the denial of Plaintiff's application for relocation benefits. (Doc. 21 at 6, ¶ 29; Doc. 23 at 7, ¶ 29) The IHO determined that Plaintiff was "not a credible witness about where he was living in 1985 and 1986, he [was] not a credible witness about getting his work assignments during 1985 and 1986, and he [was] not a credible witness about commuting to his part-time job from Sagebrush Springs to Kayenta." (Doc. 13-9 at 25) The IHO further found that Plaintiff's uncle, Kee Bahe Yazzie, was "not a credible witness about seeing either [Plaintiff] or his mother at Black Mesa (Sagebrush Springs) from 1982 onwards." (*Id.*) The IHO concluded that Plaintiff was a legal resident of the HPL on December 22, 1974, but Plaintiff was not residing on the HPL resident in 1985, when Plaintiff became head of household. (*Id.* at 26)

On July 26, 2017, ONHIR issued its Notice of Final Agency Action affirming the IHO's decision denying Plaintiff's application. (Doc. 21 at 6, ¶ 30; Doc. 23 at 7, ¶ 30) Plaintiff subsequently filed the Complaint in this matter, seeking judicial review of ONHIR's decision that he is not eligible for relocation benefits under the Settlement Act. (Doc. 1)

## II.     STANDARD OF REVIEW

The Administrative Procedure Act ("APA") governs judicial review of an IHO's decision under the Settlement Act. *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). Under Fed. R. Civ. P. 56, summary judgment is appropriate when (1) the movant shows that there is no genuine dispute as to any material fact, and (2) after viewing the evidence most favorably to the non-movant, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the Court reviews agency action pursuant to the APA, however, the administrative agency is the fact-finder, and the Court does not have disputed facts to resolve. *Occidental Engineering Co. v. Immigration & Naturalization Service.*, 753 F.2d 766, 769 (9th Cir. 1985). Instead, the Court must determine whether "as a matter of law the evidence in the

administrative record permitted the agency to make the decision it did." *Id*. As such, summary judgment is appropriate "for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Id*.

Pursuant to the APA, the Court may set aside an administrative agency's decision if the decision was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Bedoni*, 878 F.2d at 1122 (citing 5 U.S.C. § 706(2)(A), (2)(E), and *Walker v. NHIRC*, 728 F.2d 1276, 1278 (9th Cir. 1984)). The Court's scope of review is narrow, and the Court may not "substitute its judgment for that of the agency." *Hopi Tribe*, 46 F.3d at 914 (internal citations omitted).

Substantial evidence requires "more than a mere scintilla but less than a preponderance" and is "such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Akee v. Office of Navajo & Hopi Indian Relocation*, 907 F.Supp. 315, 318 (D. Ariz. 1995) (internal citation omitted). The IHO may "draw inferences logically flowing from the evidence[,]" and if the "evidence is susceptible of more than one rational interpretation," the Court must uphold the IHO's decision. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

An IHO's decision will meet the arbitrary and capricious standard of review if "the agency examine[d] the relevant data and articulate[d] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Hopi Tribe*, 46 F.3d at 914 (internal citations omitted). If the IHO "considered the relevant factors and articulated a rational connection between the facts found and the choices made[,]" the Court must affirm the IHO's decision. *Ranchers Cattlemen Action Legal Fund United Stockgrowers of American v. U.S. Dept. of Agr.*, 499 F.3d 1108, 1115 (9th Cir. 2007) (citing *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1206 (9th Cir. 2004)). The IHO's decision will be arbitrary and capricious if the IHO "entirely failed to consider an important

aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

## III.    PENDING MOTIONS FOR SUMMARY JUDGMENT

### A. Plaintiff's Supplemental Exhibits Will Not Be Considered

As an initial matter, this Court generally will not consider "extra-record" exhibits. *Tso v. Office of Navajo & Hopi Indian Relocation*, No. CV17-08183-PCT-JJT, 2019 WL 1877360, at *7 (D. Ariz. Apr. 26, 2019). Four circumstances may permit the Court's consideration of extra-record exhibits: "(1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) if the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." *Id.* (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)). Nevertheless, arguments raised for the first time in a reply brief and arguments not raised during administrative proceedings are waived. *Sands v. Office of Navajo & Hopi Indian Relocation*, No. CV-22-08131-PCT-JAT, 2023 WL 8281705, at *3-4 (D. Ariz. Nov. 30, 2023) (citing *Turtle Island Restoration Network v. U.S. Dept. of Commerce*, 672 F.3d 1160, 1166 n.8 (9th Cir. 2012)); *see also Bahe v. Office of Navajo & Hopi Indian Relocation*, No. CV-17-08016-PCT-DLR, 2017 WL 6618872, at *6 (D. Ariz. Dec. 28, 2017) (argument waived for failure to be raised during administrative proceedings).

To his reply in support of his Motion for Summary Judgment and response to ONHIR's Cross-Motion for Summary Judgment, Plaintiff attaches four extra-record exhibits: Exhibit A, BIA Employee Housing Rules and Procedures (Doc. 24-1); Exhibit B, an IHO hearing decision in *Nelson K. Begay*, Hearing No. 92-127 (October 1992) (Doc. 24-2); Exhibit C, an IHO hearing decision in *Marilyn Largo*, Hearing No. 86-16 (August 1986) (Doc. 24-3); and Exhibit D, an IHO hearing decision in *Doris Smallcanyon*, Hearing

No. 86-25 (August 1986) (Doc. 24-4).

ONHIR argues that the Court should not consider Plaintiff's Exhibits A through D, attached to Plaintiff's response to ONHIR's Cross-Motion for Summary Judgment. (Doc. 26 at 4) ONHIR argues that Plaintiff did not make an argument regarding Exhibit A in the administrative proceedings or in Plaintiff's Motion for Summary Judgment, and that Exhibits B, C, and D predate the Ninth Circuit's residency test and are distinguishable from Plaintiff's case. (*Id*. at 4-7) Further, ONHIR asserts that Plaintiff did not argue or establish that Exhibits A through D meet an exception to the rule prohibiting consideration of extra-record exhibits. (*Id*. at 5)

### 1.  Exhibit A

Plaintiff uses Exhibit A, BIA Employee Housing Rules and Procedures, to support his argument that the IHO improperly found that Plaintiff moved his legal residence from Sagebrush Springs to his parents' BIA employee quarters in Kayenta. (Doc. 24 at 3-7) Plaintiff asserts that his legal residence from 1984-1988 could not have been his parents' BIA employee quarters, because BIA housing policies prohibited children over 21 from residing with employee parents. (*Id*. at 6-7) Regarding tenants, Exhibit A provides that:

> Bureau quarters are maintained for the benefit of Bureau employees and their immediate family. The immediate family includes the tenant's spouse and unmarried dependent children less than 21 years of age. No tenant is free to move additional families or other persons into assigned quarters. Subleasing quarters to friends, relatives or other people, either written or verbal are PROHIBITED. Tenants violating this procedure will be cause for immediate removal from quarters.

(Doc. 24-1 at 3)

ONHIR argues that the Court should not consider Exhibit A because Plaintiff waived the argument by not presenting it in the administrative tribunal; the provision is akin to a lease agreement, under which a tenant may legally reside in BIA employee quarters even if the tenant is violating the agreement; and the record contains no evidence that Plaintiff knew about or complied with the BIA housing policies. (Doc. 26 at 5-6)

In the IHO hearing, Plaintiff did not argue that BIA employee housing policies prohibited Plaintiff from making his parents' BIA quarters his own legal residence from

1984-1988, after Plaintiff turned 21 years old. Even if Plaintiff can show that Exhibit A satisfies one of the four exceptions to admit extra-record exhibits, Plaintiff's Exhibit A contains no date, and it is unclear when the BIA policies in Exhibit A were applicable, whether the BIA policies were applicable in the 1980s, or whether Plaintiff and his parents were aware of the BIA policies in the 1980s. Plaintiff has not presented sufficient foundation to support consideration of Exhibit A by this Court at this stage.

Accordingly, the Court will not consider Plaintiff's Exhibit A. (Doc. 24-1)

### 2. Exhibits B, C, and D

Plaintiff attached three prior IHO decisions as Exhibits B, C, and D: Exhibit B, an IHO hearing decision in *Nelson K. Begay*, Hearing No. 92-127 (October 1992) (Doc. 24-2); Exhibit C, an IHO hearing decision in *Marilyn Largo*, Hearing No. 86-16 (August 1986) (Doc. 24-3); and Exhibit D, an IHO hearing decision in *Doris Smallcanyon*, Hearing No. 86-25 (August 1986) (Doc. 24-4). Referring to Exhibits B, C, and D, Plaintiff asserts that IHOs previously "applied the principles of domicile long-recognized by ONHIR to find that the applicants had retained their HPL homesite as their legal residence despite temporarily residing elsewhere for employment or education." (Doc. 24 at 4)

Plaintiff's Exhibits B, C, and D are dated between 1986 and 1992. (Docs. 24-2, 24-3, 24-4) Exhibits B, C, and D existed at the time of the ONHIR administrative proceedings, initiated in 2009, as well as at the time of filing of Plaintiff's June 2023 Motion for Summary Judgment. Yet, Plaintiff did not present Exhibits B, C, or D to the IHO during administrative proceedings, nor did Plaintiff include Exhibits B, C, or D with his Motion for Summary Judgment. Plaintiff did not attach Exhibits B, C, and D until his reply in support of his Motion for Summary Judgment and response to ONHIR's Cross-Motion for Summary Judgment. *See Sands*, 2023 WL 8281705, at *3-4; *Bahe*, 2017 WL 6618872, at *6.

Moreover, Plaintiff does not assert that Exhibits B, C, or D satisfy one of the four exceptions to admit extra-record exhibits. Although the "Court may consider prior ONHIR decisions to determine whether a decision is arbitrary and capricious," *Stago*, 562

F.Supp.3d at 102, "previous decisions only serve this purpose if they carry precedential value in the case at hand." *Whitehair v. Office of Navajo & Hopi Indian Relocation*, No. CV-17-08278-PCT-DGC, 2018 WL 6418665, at *3 (D. Ariz. Dec. 6, 2018). Prior decisions may be considered if they "set forth ONHIR policy or if they involve facts indistinguishable from the instant case." *Stago*, 562 F.Supp.3d at 102. The three prior IHO decisions in Exhibits B, C, and D provide limited details regarding the facts of record in each respective relocation case. This Court has declined to supplement the record where plaintiffs similarly failed to show that the extra-record decisions had precedential value or demonstrated that the cases "represent[] a settled course of adjudication and a general policy by which Defendant's exercise of discretion will be governed." *Id*.; *see also Sands*, 2023 WL 8281705, at *3-4; *Webb v. Office of Navajo & Hopi Indian Relocation*, 615 F.Supp.3d 1049, 1057 (D. Ariz. 2022).

Accordingly, the Court will not consider Plaintiff's Exhibits B, C, and D. (Docs. 24-2, 24-3, 24-4)

**B. The IHO Decision Is Not Supported by Substantial Evidence and Is Arbitrary and Capricious**

In his motion for summary judgment, Plaintiff asserts 1) that the IHO decision was arbitrary and capricious because the IHO ignored ONHIR precedent allowing the correction of inaccurate information on Plaintiff's application and failed to evaluate all record evidence, relying instead on Plaintiff's answer to question 8(a) on his application for benefits, 2) that the IHO did not support his adverse credibility findings, findings of fact, or explanation for his decision with substantial evidence, and 3) that the IHO did not support his adverse credibility finding for Kee Bahe Yazzie with substantial evidence. (Doc. 20 at 7-15)

ONHIR asserts that Plaintiff has not met his burden to show intent to reside on the HPL, that the IHO did not solely rely on Plaintiff's statements in his application, that the Kayenta residence of Plaintiff's parents was not temporary for Plaintiff, and that substantial evidence supported the IHO's credibility findings. (Doc. 22 at 11-16)

As stated in Section I(A), *supra*, because Plaintiff and ONHIR agree that Plaintiff became the head of household as an individual at some point in 1985, only HPL residence in 1985 is at issue in this appeal. (Doc. 20 at 3; Doc. 22 at 11)

> 1. *The IHO Failed to Follow Precedent and Ignored Competent Record Evidence*
>
> > a. *Consideration of ONHIR precedent in light of record evidence*

Plaintiff argues that the IHO decision was arbitrary and capricious because the IHO failed to follow ONHIR precedent and "arbitrarily gave conclusive weight to [Plaintiff's] response to question 8(a) on his relocation benefits application, '1984,' as the date he moved from the HPL." (Doc. 20 at 11-13; Doc. 24 at 8-13) Plaintiff asserts that the IHO ignored that Plaintiff wrote the reason for moving as "Relocation" and ignored evidence from his mother Lucille's ONHIR file demonstrating that the family continued to reside on the HPL in Sagebrush Springs until the family was relocated post-1986. (Doc. 20 at 12; Doc. 24 at 3-6, 13-14) ONHIR, in turn, argues that the IHO did not place conclusive weight on Plaintiff's response to question 8(a) on his application and asserts that the prior IHO decisions cited by Plaintiff are distinguishable. (Doc. 22 at 12-14)

If an agency "fails to follow its own precedent or fails to give a sufficient explanation for failing to do so," the agency's decision is arbitrary and capricious. *Andrzejewski v. Fed. Aviation Admin.*, 563 F.3d 796, 799 (9th Cir. 2009). Although ONHIR is not required to "find the same facts for different parties, in different proceedings, and based on different evidence[,]" the agency must "appl[y] the law consistently to cases with similar material facts." *Daw v. Office of Navajo & Hopi Indian Relocation*, No. CV-19-08212-PCT-SMB, 2020 WL 5632121, at *4 (D. Ariz. Sep. 18, 2020).

On his application for relocation benefits, Plaintiff listed his parents as Lucille and Francis Shirley. (Doc. 13-2 at 12) Plaintiff stated that he had lived at Forest Lake, also referred to as Black Mesa or Sagebrush Springs, all of his life. (*Id.* at 11) Question 8 of Plaintiff's application asked whether Plaintiff had moved from the HPL, for which Plaintiff marked "Yes." (*Id.* at 12) In response to question 8(a), when Plaintiff moved, Plaintiff

wrote "1984"; in response to question 8(b), where Plaintiff moved, Plaintiff wrote "HPL over the Hopi fence Francis & Lucille Shirley"; and in response to question 8(c), why Plaintiff moved, Plaintiff wrote "Relocation[.]" (*Id*.)

During the IHO hearing, Plaintiff testified that his family had a homesite in Sagebrush Springs on the HPL. (Doc. 13-4 at 7-8) Plaintiff testified that during high school, he lived in Sagebrush Springs and took the bus from Sagebrush Springs to Monument Valley High School until Plaintiff graduated in 1981. (*Id*. at 9) While Plaintiff was in high school, Plaintiff's parents worked in Kayenta, but where they lived would depend on the weather. (*Id*. at 10) Sometimes Plaintiff's parents stayed in Bureau of Indian Affairs ("BIA") employee quarters in Kayenta, but they would return to Sagebrush Springs if the weather allowed. (*Id*.) Plaintiff testified that his parents' BIA apartment in Kayenta had only one bedroom and a kitchen. (*Id*. at 23) Plaintiff also testified that his parents sometimes returned to Sagebrush Springs every weekend. (*Id*. at 10, 16) Sometimes, Plaintiff stayed with his parents in Kayenta, but most of the time he lived in Sagebrush Springs to take care of the cattle. (*Id*. at 10-11)

After high school, Plaintiff testified that he worked on and off in restaurants in Kayenta and commuted to work from Sagebrush Springs in a 1982 Malibu. (*Id*. 11-12) Plaintiff testified that unless he did not have gas money, he did not stay with his parents in Kayenta while working there. (*Id*. at 12-14) Plaintiff testified that he did not move from the HPL in 1984, despite writing such on his application for benefits. (*Id*. at 12) Plaintiff could not recall why he had written on his application that he moved from the HPL in 1984. (*Id*.) Instead, Plaintiff testified that he lived with his parents in Sagebrush Springs in 1984. (*Id*.) In 1985 and 1986, while living in Sagebrush Springs, Plaintiff worked part-time for a Mexican restaurant and a Holiday Inn in Kayenta and commuted 40-50 miles between Kayenta and Sagebrush Springs. (*Id*. at 13-14) Plaintiff kept his personal belongings in Sagebrush Springs, but he kept "[j]ust a bit" of his belongings at his parents' quarters in Kayenta. (*Id*. at 17-18)

In this appeal and in his post-IHO hearing brief, Plaintiff argues that the IHO

ignored prior decisions, *In the Matter of the Application of Nellie K. Deal* and *In the Matter of the Application of Darlene Williams*, in which the same IHO who presided over Plaintiff's hearing credited testimony from applicants that clarified and corrected information on their applications for benefits. (Doc. 20 at 11; Doc. 24 at 2-5, 8) In *Deal*, the IHO accepted hearing testimony that clarified inaccurate information on the applicant's benefits application, including when the applicant had moved off the HPL for school and work. (Doc. 13-8 at 8-12) In *Williams*, the IHO relied on the applicant's hearing testimony and found that the applicant showed no intent to change her legal residence on the HPL, spent weekends and summers at the HPL residence, and had not legally "moved" to her parents' BIA housing in Tuba City prior to becoming a head of household, despite initially stating such on her application. (*Id.* at 1-6)

ONHIR argues that *Williams* is distinguishable from Plaintiff's case because the applicant in *Williams* physically relocated to BIA quarters, continued to use the HPL residence on a regular basis, and maintained a legal residence on the HPL beyond the date when the applicant's family moved to BIA quarters in 1982. (Doc. 22 at 13) Unlike in *Williams*, ONHIR argues that Plaintiff's family would have physically moved to Kayenta while Plaintiff was in high school, prior to 1981 and well prior to 1984. (*Id.* at 13-14) Moreover, ONHIR asserts that the credibility of the applicant in *Williams* was not challenged, unlike here. (*Id.* at 14)

Here, the IHO stated that "in prior decisions, the undersigned has concluded that applicant's self-reports about their living circumstances, as written in their relocation applications, will be taken to be more credible than later invented oral testimony contradicting that information and that, whenever there is a discrepancy between the testimony and the application, the undersigned will rely on the written application over the testimony as being more credible and, more likely." (Doc. 13-10 at 5-6) Accordingly, the IHO found Plaintiff's written statements on his application "circumstantially more likely" than Plaintiff's hearing testimony. (*Id.* at 6-7) Importantly, the IHO described Plaintiff's application statement "about moving out of HPL in 1984" to be "by far, the paramount

evidence in this appeal[.]" (*Id*. at 6)

Despite the IHO allowing applicants in *Williams* and *Deal* to correct statements on their applications and explain their application responses through hearing testimony, the IHO refused to adequately consider Plaintiff's similar corrective statements in evaluating the evidence in this matter. Here, Plaintiff testified at the hearing that Plaintiff could not recall why he wrote in his application that he had moved from the HPL in 1984. (Doc. 13-4 at 11-14) Plaintiff further explained that he had not moved in 1984 and instead had continued living in Sagebrush Springs on the HPL in 1985 and 1986. (*Id*.) Plaintiff testified that he only occasionally stayed at his parents' employment related housing in Kayenta but usually stayed in Sagebrush Springs, which he considered his home. (*Id*. at 10-14) Although the IHO in *Williams* concluded that the applicant and her family had physically but not legally moved to BIA quarters for her father's employment, the IHO here did not explain how Plaintiff here had legally, and not merely physically, moved to his parents' BIA quarters in Kayenta from his only occasional stays in Kayenta.

The record also does not support ONHIR's argument as to why *Williams* is not applicable here. The ONHIR file for Plaintiff's mother Lucille reflects that Lucille's family never legally or permanently moved from the HPL, despite Lucille and her husband renting a BIA apartment in Kayenta during their employment. (*See* Doc. 13-1 at 7-11) Both Lucille and Plaintiff completed sworn affidavits in 1988 and 1989 attesting that Plaintiff was a member of Lucille's household. (Doc. 13 at 20-25) In Plaintiff's 1988 affidavit, Plaintiff stated that he had been a member of Lucille's household for four years. (*Id*. at 20) Moreover, like the applicant in *Williams*, Plaintiff testified that he continued to live at the HPL homesite when his parents were in Kayenta for work. On his application, Plaintiff did not write that he had moved to Kayenta in 1984; rather, Plaintiff wrote "HPL over the Hopi fence Francis & Lucille Shirley" due to "Relocation." (Doc. 13-2 at 12) Plaintiff's statement is not akin to the applicants' statements in the cases ONHIR cites, *Begay v. Office of Navajo & Hopi Indian Relocation*, 2021 WL 4247919, at *4-5 (D. Ariz. Sept. 17, 2021), and *Goldtooth v. Office of Navajo & Hopi Indian Relocation*, 2023 WL 6880648, at *5-6

(D. Ariz. Oct. 18, 2023). (Doc. 22 at 12-13) Instead, the applicants in *Begay* and *Goldtooth* made repeated, clearly contradictory statements regarding their residence and chapter membership.

Even though the IHO was not required to find the same facts for different parties, the IHO was nevertheless required to "appl[y] the law consistently to cases with similar material facts." *Daw*, 2020 WL 5632121, at *4. The IHO did not consistently apply his own precedent to the evidence presented in Plaintiff's appeal. The IHO failed to consider the relevant factors and articulate a rational connection between the facts found from the evidence presented and the choices made for the inconsistency with prior precedent. Thus, the IHO's decision was arbitrary and capricious. *See Andrzejewski*, 563 F.3d at 799.

> **b.** *The IHO's findings regarding Plaintiff's change of residence to Kayenta*

Plaintiff also argues that the IHO arbitrarily found that Plaintiff changed his legal residence to his parents' Kayenta home, despite evidence that Plaintiff's mother Lucille considered Sagebrush Springs her permanent home and that Kayenta was only a temporary home for Plaintiffs' parents during their employment. (Doc. 20 at 12) In doing so, Plaintiff argues that the IHO violated 25 C.F.R. §700.1(a), which requires ONHIR "to insure that persons displaced as a result of the [Settlement] Act are treated fairly, consistently, and equitably so that these persons will not suffer the disproportionate adverse, social, economic, cultural and other impacts of relocation." (*Id*. at 12-13) Plaintiff asserts that "substantial evidence and the 'totality of circumstances' demonstrates that [Plaintiff's] legal residence at Sagebrush Springs continued from 1984 to July 7, 1986, and beyond, and that he did not establish a permanent legal residence elsewhere." (*Id*. at 7-11) Plaintiff asserts that the proper residency standard is "intent to reside combined with manifestation of that intent[,]" that domicile requires intent, and that a domicile continues until superseded by a new one. (*Id*. at 8) (citing *Charles v. Office of Navajo & Hopi Indian Relocation*, 774 Fed. Appx. 389, 390 (9th Cir. 2019), and Restatement of Conflicts §§ 18 and 19 (1971).) Plaintiff again cites the relocation benefits decision in *Williams*, in which

the IHO stated that "a person retains an ancestral legal residence (domicile) until that person takes affirmative action to transfer their legal residence somewhere else." (*Id*.) Plaintiff asserts that the applicant in *Williams* and her parents were found to have never changed legal residence, despite physically moving to BIA quarters. (*Id*. at 9; Doc. 24 at 3-5)

ONHIR argues that the Kayenta residence could have been temporary for Plaintiff's parents but permanent for Plaintiff. (Doc. 22 at 14) Because Plaintiff attended elementary and high school in Kayenta and worked in Kayenta as an adult, ONHIR argues that Plaintiff had strong ties to Kayenta such that the IHO's decision that Plaintiff did not reside on the HPL in 1985 is owed deference. (*Id*.) ONHIR further argues that Plaintiff did not meet his burden to demonstrate that he was an HPL resident in 1985, when Plaintiff became head of household. (*Id*. at 11-16) ONHIR asserts that the Ninth Circuit clarified the test for residency in *Begay v. Office of Navajo & Hopi Indian Relocation*, 2023 WL 8449196, at *2 (9th Cir. Dec. 6, 2023). (Doc. 26 at 2-3) Accordingly, ONHIR asserts that ONHIR did not have to show that Plaintiff lost his HPL domicile, but that "'the burden of proving residency and head of household status lies with the applicant.'" (*Id*.) (quoting *Begay*, 2023 WL 8449196, at *2).

Plaintiff and ONHIR agree that Plaintiff became the head of household in 1985. (Doc. 20 at 3; Doc. 22 at 11) To determine residency, the agency considers a person's "intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,277-78; *Charles*, 774 Fed. Appx. at 390. An applicant's manifestations of intent may include ownership of livestock, ownership of improvements, grazing permits, livestock sales receipts, homesite leases, public health records, medical and hospital records, trading post records, school records, military records, employment records, mailing address records, banking records, driver's license records, tribal and county voting records, homeownership or rental off the disputed area, BIA census data, information obtained by certification field investigation, Social Security Administration records, marital records, court records, records of birth, the Joint Use Area roster, and any other relevant data. *Id*. An applicant

"who was, on December 22, 1974, away from the land partitioned to the Tribe of which he/she is not a member may still be able to prove legal residency." 49 Fed. Reg. 22,277.

Plaintiff is correct that the residency standard requires an examination of intent, combined with manifestation of that intent, and ONHIR is correct that Plaintiff had the burden to prove residency. *See Begay*, 2023 WL 8449196, at *1; 25 C.F.R. § 700.147(b); 49 Fed. Reg. 22,277.

At the IHO hearing, ONHIR counsel asserted that the primary question was "where did [Plaintiff's] family live after '74, and where did [Plaintiff] live starting in 1980 until he became a head-of-household, sometime in 1985." (Doc. 13-4 at 6) Plaintiff testified that he lived in Sagebrush Springs and took the bus to school from Sagebrush Springs to Kayenta until Plaintiff graduated in 1981. (*Id*. at 9) During high school, Plaintiff sometimes stayed with his parents in Kayenta, but most of the time he lived in Sagebrush Springs to take care of the cattle. (*Id*. at 10-11) After high school, Plaintiff testified that he worked on and off in restaurants in Kayenta and commuted to work from Sagebrush Springs in a 1982 Malibu. (*Id*. at 11-12) Plaintiff testified that he did not stay with his parents in Kayenta while working there, unless he did not have gas money. (*Id*. at 12-14) Plaintiff testified that he did not move from the HPL in 1984, despite writing such on his application for benefits. (*Id*. at 12) In 1985 and 1986, Plaintiff worked part-time for a Mexican restaurant and a Holiday Inn in Kayenta and commuted 40-50 miles between Kayenta and Sagebrush Springs for this intermittent work when available. (*Id*. at 13-14) Plaintiff testified that his employers called him to come in to work and that his weekly schedule varied because he was only part-time help. (*Id*. at 16-17) Plaintiff also testified that he kept his personal belongings in Sagebrush Springs, and he kept "[j]ust a bit" of his belongings at his parents' quarters in Kayenta. (*Id*. at 17-18) Plaintiff stated that his parents' BIA apartment was small, with one bedroom and a kitchen. (*Id*. at 23) Plaintiff testified to his recollection that there was a landline phone at the Forest Lake chapter house but not at his family's house in Sagebrush Springs. (*Id*. at 18) Plaintiff testified that the commute from Sagebrush Springs to Kayenta was partly paved with 5-6 miles of dirt road, that the road was muddy

when wet if the road had not been graded, and that he drove his two-wheel drive Malibu "as far as [he] could, along the west ridge, that's the only way to do it." (*Id.* at 18-20) Plaintiff also testified that it had taken his high school bus an hour to drive from Sagebrush Springs to Kayenta, and it took him about 45 minutes to drive from Sagebrush Springs to Kayenta in his Malibu. (*Id.* at 23-25)

On June 21, 2017, ONHIR employee Joseph Shelton submitted a Declaration to answer the IHO's questions regarding the distance between Chapter House and the Sagebrush Springs residence, and the condition of the road between the two locations. (Doc. 13-9 at 16-17) In his Declaration, Joseph Shelton stated that the distance between Sagebrush Springs to the Forest Lake Chapter House was about 12 miles; that the first four miles from the Chapter House had been paved since the 1970s but the remainder was unpaved in the 1980s; and that in inclement weather, the road was muddy and impassable, especially in a two-wheel drive vehicle. (*Id.*) Joseph Shelton stated that he spoke to the Forest Lake Chapter Community Service Coordinator, who informed Mr. Shelton that the Forest Lake Chapter House never had a landline and that current telephone service was provided through a satellite dish installed around 1990. (*Id.*)

On June 22, 2017, Plaintiff submitted a notarized Affidavit to answer the IHO's post-hearing emailed factual questions to which his counsel had objected. (Doc. 13-9 at 10) In his Affidavit, Plaintiff stated that his family's homesite at Sagebrush Springs was about 12 miles from the Forest Lake Chapter House; that the condition of the road between Sagebrush Springs and the Chapter House was very rough in the mid-1980s; that in 1985 Plaintiff worked in Kayenta at Golden Sands, Amigos, and the Holiday Inn; that Plaintiff worked full-time at Golden Sands in 1985; that Plaintiff drove between Sagebrush Springs and Kayenta every weekday to work at Golden Sands from 2 pm through closing; that Plaintiff later worked part-time as an "on-call" employee for Amigos if a regular employee did not show up for work; and that Amigos would contact Plaintiff's parents in Kayenta, who then drove to Sagebrush Springs to inform Plaintiff that he would need to work at Amigos the following day. (*Id.* at 10)

As to whether the BIA housing in Kayenta was temporary and occasional for Plaintiff rather than permanent, the IHO did not support his decision with substantial evidence, nor did the IHO apply the law consistently in cases with similar facts. *Daw*, 2020 WL 5632121, at *4. In *Williams*, the IHO found that the applicant had not legally moved from the HPL after moving with her parents to BIA housing, because "the BIA quarters were considered to be a temporary perquisite" of her father's employment. (Doc. 13-8 at 5) Here, the IHO made no finding that the BIA quarters for Lucille and her husband were temporary such that Plaintiff never legally moved from Sagebrush Springs. Further, the IHO did not make a finding that Plaintiff had shown an intent to legally change his residence from Sagebrush Springs to Kayenta. Notably, no evidence in the record demonstrated that Plaintiff had any other permanent legal residence besides Sagebrush Springs.

The evidence from the ONHIR files of Plaintiff's mother Lucille and his older brother Frankie also corroborates the temporary nature of the BIA housing in Kayenta, which Plaintiff testified was only occasional for him. However, the IHO did not adequately consider or address this evidence in his decision, nor did the IHO reasonably conclude based on substantial evidence that the BIA housing was more than a temporary, occasional residence for Plaintiff. Plaintiff and Lucille completed sworn affidavits in 1988 and 1989 that Plaintiff was a member of Lucille's household. (Doc. 13 at 20-25) Plaintiff's 1988 affidavit stated that Plaintiff had been a member of Lucille's household for four years. (*Id.* at 20) Lucille was deemed eligible for relocation benefits on October 29, 1981. (Doc. 13 at 6, 8, 17-18, 27; Doc. 13-1 at 1) Following a field investigation and Certification Review, in May 1987, the Navajo and Hopi Indian Relocation Commission (the predecessor to ONHIR) confirmed that Lucille was indeed eligible for relocation benefits. (Doc. 13 at 12-18) In February 1986, ONHIR determined that Lucille had lived off the HPL from November 1972 to November 1981 while working in Kayenta and declined to approve Lucille's request to be added to the ONHIR's "Currently Continuously Domiciled" roster of persons on the HPL. (*Id.* at 10) In June 1990, Lucille contested ONHIR's determination

that she was not a current and continuous HPL resident because she had moved back to Black Mesa/Sagebrush Springs on the HPL, had a home and livestock there, and did not live in Kayenta. (Doc. 13-1 at 5) Lucille executed a notarized Affidavit of HPL Residence, asserting that Lucille was a current resident of the HPL and intended to live on the HPL until she received relocation benefits. (*Id*. at 3) In a June 1990 HPL Residence Record, ONHIR employee Nora Louis wrote that Lucille and her husband stated that they "never moved off the HPL permanently or legally[,]" though they temporarily rented a place in Kayenta for work, and that it appeared to Nora Louis that Lucille and her family had never permanently moved off the HPL. (*Id*. at 7-11) Lucille subsequently received relocation benefits and was relocated. (Doc. 13-2 at 15) Included in Lucille's household for relocation benefits were Lucille's husband and two of her sons, Plaintiff and Peter Clyde. (*Id*. at 16) Lucille's third son, Frankie, was also found eligible for his own relocation benefits on June 30, 1998. (Doc. 13-3 at 6)

The record includes substantial evidence that Plaintiff's permanent legal residence was on the HPL when he became head of household, and there is not substantial evidence in the record that Plaintiff manifested an intent to move his permanent legal residence from the HPL in the relevant timeframe. The IHO failed to consider important aspects of the residency issue, the IHO offered an explanation for the IHO's decision that runs counter to the evidence before the IHO, and the IHO's conclusions are implausible such that they "could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43 (1983). The IHO's decision was arbitrary and capricious.

## 2. *Findings of Fact Relating to Adverse Credibility Finding for Plaintiff*

Plaintiff argues that the IHO did not support his findings of fact and credibility findings with substantial evidence. (Doc. 20 at 13-15) Plaintiff argues that the IHO "seized on a single collateral issue suggested by ONHIR's counsel in his cross-examination of [Plaintiff] that 'maybe' [Plaintiff] used a phone at the Forest Lake Chapter to learn of work assignments by his employers in Kayenta." (*Id*. at 14) Instead, Plaintiff asserts that he

testified that his employers "got a hold of him" and that although Plaintiff sometimes stayed with his parents in Kayenta if he did not have enough gas money, he regularly returned to Sagebrush Springs. (*Id.*) Plaintiff also asserts that his parents' BIA employee housing in Kayenta was not his parents' legal residence. (*Id.*) Further, Plaintiff argues that the IHO improperly "fabricated" Hopi pressure as a circumstantial reason that Plaintiff's family moved from the HPL, despite documents in Lucille's file demonstrating that the family moved back to Sagebrush Springs full-time in 1990 because Lucille was "tired of waiting for the relocation home[.]" (*Id.* at 15; Doc. 24 at 14)

ONHIR argues that the IHO ruled consistently with recent cases in this Court finding that an applicant's statements in his application are "extremely relevant." (Doc. 22 at 15) ONHIR asserts that the IHO provided several pages with record references for finding Plaintiff's testimony and Affidavit unbelievable and contradictory, including that Plaintiff alleged full-time employment at Golden Sands for the first time in his Affidavit, that Plaintiff's explanation for receiving employment shifts was logistically improbable, and that Plaintiff stated in his application that he moved off the HPL in 1984, contradicting Plaintiff's testimony that he commuted between Sagebrush Springs and Kayenta in 1985 and 1986. (*Id.* at 15-16) Accordingly, ONHIR asserts that the IHO did not focus on the "single collateral issue" of how Plaintiff received work assignments, because "Plaintiff's employer's 'ability to contact [him] is central and most material to a determination about whether applicant's testimony is credible and relevant.'" (*Id.* at 16)

Where the IHO discounted Plaintiff's credibility regarding residence, the IHO was required to provide "'specific, cogent reasons'" that were "'not based on speculation and conjecture.'" *Beam v. Office of Navajo & Hopi Indian Relocation*, No. CV-21-08149-PCT-SPL, 624 F.Supp.3d 1069, 1077 (D. Ariz. 2022) (quoting *Shire v. Ashcroft*, 388 F.3d 1288, 1295 (9th Cir. 2004)); *see also Tsosie v. Office of Navajo & Hopi Indian Relocation*, 771 Fed. Appx. 426, 426-27 (9th Cir. 2019) (conclusory statements insufficient for adverse credibility finding).

In his decision, the IHO determined that circumstantial reasons did not support

Plaintiff's claim of living at Sagebrush Springs in 1985-86, including "pressure from the Hopis that was motivating residents to move ([Plaintiff's] uncle relocated in 1982) which had the effect of marginalizing the area for Navajo residents (in addition to [Plaintiff's] family's participation in livestock reduction), [Plaintiff's] parents had already been certified eligible to receive relocation benefits, [Plaintiff's] parents were living in Kayenta while they were awaiting a relocation home, [Plaintiff] grew up in Kayenta and attended school there, and most importantly, there was NO telephone at the Sagebrush Springs home through which [Plaintiff] could receive his work assignments in Kayenta." (Doc. 13-10 at 1-2) The IHO determined that Plaintiff was "not a credible witness about where he was living in 1985 and 1986, he [was] not a credible witness about getting his work assignments during 1985 and 1986, and he [was] not a credible witness about commuting to his part-time job from Sagebrush Springs to Kayenta." (Doc. 13-9 at 25) Because the IHO found that an employer's ability to contact Plaintiff was "central and most material to a determination about whether [Plaintiff's] testimony [wa]s credible and relevant[,]" the IHO did not find plausible or believable Plaintiff's claim of residence at Sagebrush Springs while working in Kayenta in 1985 and 1986. (Doc. 13-10 at 6-7)

The IHO's circumstantial reasons are not supported by the record. The record evidence does not include "Hopi pressure" on Plaintiff or his family as a reason for moving off the HPL by 1985 or 1986. (Doc. 20 at 15) The record evidence also does not demonstrate that Plaintiff's family was "living in Kayenta while they were awaiting a relocation home[.]" (Doc. 13-10 at 2) Instead, the record evidence reflects that Plaintiff's family was living full-time on the HPL as late as 1990 while waiting for their relocation home. (Doc. 13-1 at 3, 5, 7-11; Doc. 13-2 at 15) Nor does the record demonstrate that Plaintiff grew up in Kayenta. (Doc. 13-10 at 1) Although Plaintiff attended school in Kayenta, Plaintiff testified that he lived in Sagebrush Springs and took the bus to school in Kayenta each day. (Doc. 13-4 at 24-25) The ALJ also incorrectly found that Plaintiff "returned" to Sagebrush Springs after high school. (Doc. 13-9 at 24) Plaintiff testified that he had lived at Sagebrush Springs during high school, so Plaintiff could not have "returned"

there.

Further, the IHO dismissed the entirety of Plaintiff's hearing testimony based on Plaintiff's ability to receive work assignments, finding that "[t]he employer's ability to contact [Plaintiff] is central and most material to a determination about whether [Plaintiff's] testimony is credible and relevant[.]" (Doc. 13-10 at 6) *See Ray v. Office of Navajo & Hopi Indian Relocation*, No. CV-22-08101-PCT-SPL, 2023 WL 4761789, at *7-8 (D. Ariz. July 26, 2023) (IHO erred in rejecting applicant's entire testimony for one reason). ONHIR asserts that Plaintiff's statements in his application are "extremely relevant" (Doc. 22 at 15), yet in the cases ONHIR cites, the IHOs discredited the applicants' testimony based only in part on the applicants' contradictory statements. *Begay*, 2021 WL 4247919, at *4-5; *Goldtooth*, 2023 WL 6880648, at *5-6. The IHO did not explain why the entirety of Plaintiff's testimony must be discounted due to Plaintiff's ability to receive work assignments. The evidence of record, including Plaintiff's hearing testimony, demonstrates Plaintiff's manifestation of intent to reside in Sagebrush Springs. During high school and beyond, Plaintiff testified that he lived in Sagebrush Springs, not at his parents' work-related residence in Kayenta; Plaintiff further testified that he only sometimes stayed with his parents, such as when he did not have gas money. (Doc. 13-4 at 12-14) Plaintiff testified that his employers called him to come into work (*Id.* at 16-17), and Plaintiff stated in his Affidavit that his parents informed him of his work assignments by driving to Sagebrush Springs (Doc. 13-9 at 10). Plaintiff testified that he drove between Sagebrush Springs and Kayenta on partly paved roads, and Plaintiff asserted that his school bus had made the same daily commute to his high school. (Doc. 13-4 at 18-25) Moreover, although the IHO disbelieved Plaintiff's claim of full-time employment at the Golden Sands restaurant in 1985 based on Plaintiff's gross earnings, Plaintiff never stated that he worked full-time for an entire year. (*See* Doc. 13-10 at 4) Instead, Plaintiff testified that he worked on and off in 1985 and 1986. (Doc. 13-4 at 11-12) On and off full-time and part-time employment would be consistent with Plaintiff's earnings in 1985 and 1986. (*See* Doc. 13-2 at 19-21; Doc. 13-3 at 1)

The ONHIR files and hearing testimony from Lucille and Plaintiff's brother Frankie corroborate Plaintiff's testimony, yet the IHO did not consider Lucille and Frankie's files in his decision denying Plaintiff's application. As reflected in the HPL Residence Record form completed by ONHIR employee Nora Louis, Lucille stated that she and her family had never permanently or legally moved off the HPL, that she and her husband were temporarily renting in Kayenta during their employment, and that her sons constantly used the HPL home. (Doc. 13-1 at 9-10) Plaintiff completed two Affidavits of Household Membership in 1988 and 1989, in which Plaintiff asserted that he was a member of Lucille's household. (Doc. 13 at 20, 24-25) In his 1988 affidavit, Plaintiff asserted that he had been a member of Lucille's household for four years. (*Id.* at 20) In 1989, Lucille completed an affidavit that Plaintiff was a member of her household. (*Id.* at 22-23) Lucille also testified at Frankie's hearing that while she was working in Kayenta, she had a place "[u]p there at the Mesa" on the HPL, but she also had BIA rental housing. (*Id.* at 22-24) Lucille testified that Frankie and her sons lived in her HPL house. (*Id.* at 24) Lucille and Frankie were ultimately certified for benefits as current residents of the HPL. Such evidence tends to support a finding that Plaintiff did not intend to change his residence to a location other than the HPL homesite.

In sum, the IHO's adverse credibility finding for Plaintiff and the IHO's corresponding finding that it was "circumstantially more likely" that Plaintiff moved off the HPL in 1984 were not supported by substantial record evidence and were not supported by cogent reasons. Because the IHO's adverse credibility finding for Plaintiff's testimony was central to the IHO's decision, the IHO's conclusion that Plaintiff moved from the HPL in 1984 is not supported by substantial evidence. This Court cannot "confidently conclude that no reasonable [IHO], when fully crediting" Plaintiff's testimony, would have reached a different conclusion. *Ben v. Office of Navajo & Hopi Indian Relocation*, No. CV-22-08032-PCT-SPL, 2023 WL 2140462, at *4 (D. Ariz. Feb. 21, 2023) (IHO's lack of reasons for negative credibility finding not harmless error). The IHO erred.[6]

---

[6] Plaintiff also asserts that the language of the IHO's decision "reveals an animus toward

### 3. Adverse Credibility Finding for Kee Bahe Yazzie

Plaintiff also asserts that the IHO did not provide a reason for the adverse credibility finding regarding Kee Bahe Yazzie's testimony. (Doc. 20 at 10) ONHIR asserts that even if "the IHO's credibility determination for Kee Yazzie was deficient (which ONHIR does not concede), the IHO did not base his Decision on Kee Yazzie's testimony." (Doc. 26 at 10) As such, ONHIR asserts that any error was harmless as it did not affect the outcome of Plaintiff's case. (*Id.*)

At the IHO hearing, Kee Bahe Yazzie testified that he had received a relocation home in Page, Arizona in 1982, but he was still a member of the Forest Lake Chapter and visited Lucille once or twice a month if he was not working on the weekends. (Doc. 13-5 at 2-4, 7-10) After relocating to Page, Yazzie stated that he daily commuted to work at the Black Mesa Peabody Coal mine, which was about 5-6 miles from Lucille's home. (*Id.* at 3) Yazzie asserted that he saw Plaintiff living at Lucille's HPL homesite in 1982, although he also stated that Plaintiff sometimes stayed with his parents in Kayenta during high school. (*Id.* at 4-5) Yazzie testified that he did not know where Plaintiff went after Plaintiff finished high school, but he still saw Plaintiff at Sagebrush Springs on the weekends when Yazzie visited. (*Id.* at 5-6) Yazzie stated that Lucille and her husband regularly returned to Sagebrush Spring on the weekends and stayed there full time during the summers, including in 1984. (*Id.*)

With respect to Kee Bahe Yazzie's credibility, the IHO stated only that Yazzie "testified about his relocation from the Black Mesa area to Page in 1982, testified about returning to the area monthly where he saw his sister, Lucille, Shirley, and where he saw [Plaintiff]. Key [*sic*] Bahe Yazzie not a credible witness about seeing either [Plaintiff] or his mother at Black Mesa (Sagebrush Springs) from 1982 onwards." (Doc. 13-9 at 25)

While an IHO's credibility findings generally receive substantial deference, "'an adverse credibility finding must be supported by specific, cogent reasons, and cannot be

---

[Plaintiff] and belies any pretense of objectivity in evaluating his claim for benefits." (Doc. 24 at 10) Given that the Court will reverse the IHO's decision for other reasons, the Court does not reach Plaintiff's argument regarding the IHO's tone.

based on speculation and conjecture.'" *Beam*, 624 F.Supp.3d at 1077. Where an IHO "fails to provide any reasons for a negative credibility finding, 'a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable [IHO], when fully crediting the testimony, could have reached a different [eligibility] determination.'" *Ben*, 2023 WL 2140462, at *4.

The IHO's credibility findings for Kee Bahe Yazzie were insufficient. The ALJ did not provide reasoning for discounting Yazzie's testimony. Where an IHO "fails to provide any reasons for a negative credibility finding, 'a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable [IHO], when fully crediting the testimony, could have reached a different [eligibility] determination.'" *Ben*, 2023 WL 2140462, at *4. Yazzie's testimony that he saw Plaintiff monthly on the weekends at Sagebrush Springs from 1982 onward does not alone establish that Plaintiff lived full-time at Sagebrush Springs in 1985 and 1986, but Yazzie's testimony as to seeing Plaintiff nevertheless tends to support Plaintiff's testimony regarding continued HPL residence in the relevant time period. In light of the other errors reflected above, the Court cannot "confidently conclude that no reasonable [IHO], when fully crediting the testimony, could have reached a different [eligibility] determination[.]'" *Ben*, 2023 WL 2140462, at *4. Thus, the IHO's insufficient credibility finding for Kee Bahe Yazzie was not harmless.

## IV.    REMAND

Given that the IHO failed to satisfy the arbitrary and capricious and substantial evidence standards, this Court cannot uphold the IHO's decision. Nevertheless, Respondent is correct that "[i]n administrative review cases, the district court sits as an appellate tribunal[,]" and the Court "may not substitute its judgment for that of the agency. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43." (Doc. 22 at 16) When "the record before the agency does not support the agency action, […] the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Begay v. Office of Navajo & Hopi Indian Relocation*, No. CV-16-08221-PCT-DGC, 2017 WL 4297348, at *4 (D. Ariz. Sept. 28, 2017); *UOP v. United States*, 99 F.3d 344, 351 (9th

Cir. 1996). In rare circumstances, this Court may find "that the record clearly demonstrates an applicant's eligibility for relocation benefits." *Begay*, 2017 WL 4297348, at \*4.

Here, remand for further proceedings is warranted. Following post-hearing briefing, the IHO made a narrow request for additional information. Because final briefing had already been submitted, Plaintiff did not have an opportunity to fully present all pertinent evidence, challenge OHNIR's additional evidence, and make argument in support of Plaintiff's position based on such. Nor could the IHO subsequently consider all relevant evidence and argument from the parties. For example, upon remand, Plaintiff may have the opportunity to present to the IHO Plaintiff's Attachments A through D to his response to the cross-motion for summary judgment and his reply in support of his motion for summary judgment. Remand allows the IHO to further assess the evidence of record, including testimony from Plaintiff and Kee Bahe Yazzie. The Court finds that Plaintiff has not shown rare circumstances required for this Court to award relocation benefits, and the Court remands for further proceedings. *See Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) ("where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed" there is no purpose for remand).

## V.   CONCLUSION

In sum, the IHO's decision was arbitrary and capricious and was not supported by substantial evidence. The Court will remand this matter for proceedings consistent with this Order.

Accordingly,

**IT IS ORDERED reversing** the final decision of ONHIR dated July 7, 2017.

**IT IS FURTHER ORDERED granting** Plaintiff's Motion for Summary Judgment (Doc. 20) as set forth herein.

**IT IS FURTHER ORDERED denying** Defendant ONHIR's Cross-Motion for Summary Judgment (Doc. 22).

**IT IS FURTHER ORDERED** that this matter is **remanded** to ONHIR for further proceedings consistent with this Order.

1  **IT IS FURTHER ORDERED** that the Clerk of Court to enter judgment
2  accordingly and terminate this action.
3  Dated this 29th day of April, 2024.
4
5  _____
6  Honorable Deborah M. Fine
   United States Magistrate Judge
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28